## HILL v. MOORE.

No. 4399.   Opinion Filed May 25, 1915.

(149 Pac. 211.)

1.   **SIGNATURES—Witnesses—Name Signed by Notary.** In a case where the grantor is unable to write and the notary, or other officer taking the acknowledgment, signs the grantor's name to the deed, but does sign his name as a witness to the signature of the grantor, two other persons signing as witnesses to the signature, the certificate by the notary or other officer of the grantor's acknowledgment is a sufficient compliance with the statute, as such an acknowledgment by the grantor is an adoption of the signature.

2.   **SIGNATURES—"Subscription"—Mark to Unacknowledged Instrument—Witnesses.** The mark to an unacknowledged instrument of one who cannot write, under the statutes of this state, is not a "signature" or "subscription," unless the person writing his name writes his own as a witness near it.

3.   **CHAMPERTY AND MAINTENANCE—Conveyance of Land—Person Out of Possession.** A deed to land, where the grantor has been out of possession, or has not received any of the rents or profits from the land for the space of one year before the date of the conveyance, is void, as it violates the champerty statute.

(Syllabus by Mathews, C.)

*Error from District Court, Okmulgee County;*

*Wade S. Stanfield, Judge.*

Action by Mose Moore against Josephine Hill. Judgment for plaintiff, and defendant brings error. Affirmed.

*Mountjoy & Leith* and *M. L. Leith,* for plaintiff in error.

*Orlando Swain,* for defendant in error.

MATHEWS, C. 1. This action involves the title to 40 acres of land, both plaintiff and defendant claiming title by deed from a common source. It appears that one Mollie Hawkins, a Creek negress, was the original owner, and both plaintiff and defendant claim to have received a deed from her. The plaintiff claims to have purchased the land in controversy on the 16th day of December, 1908, and to have gone into possession in January, 1909, and to have remained in possession, having made valuable improvements thereon and cultivated and resided thereon with his family. His deed was placed of record on the 8th of August, 1911. The defendant claims to have obtained a deed from the said Molie Hawkins for the tract on the 10th of March, 1911, and the same was filed for record the next day. Each of the parties will be designated here as in the trial court.

In November, 1911, plaintiff instituted his action against defendant to have her deed canceled for the reason that it was a cloud upon his title, alleging that the deed to defendant was a forgery, and, if not, the defendant took the deed with knowledge that he was the title owner and in exclusive possession. The defendant, in her answer, alleges that at the time she purchased the land in controversy Mollie Hawkins was the owner and in possession, and that no deed was of record showing any divesting of the title from Mollie Hawkins, and further alleges that at the time she purchased plaintiff had no deed to the land, but that the same was prepared and dated back to show that it was a prior deed to that of defendant. The defendant states further that at the time she purchased that plaintiff knew she

intended to purchase, and he told her that he was holding as a tenant, and encouraged her to buy the land and rent it to him, and did not disclose to her that he claimed the land nor had any deed to it, and that after she purchased he did actually rent it from her.

2. The testimony introduced at the trial shows the usual wide divergence and irreconcilable conflicts that always appear in this class of cases.

The testimony of plaintiff was to the effect that on the 16th day of December, 1908, Mollie Hawkins conveyed the land in controversy to him by warranty deed, which was corroborated by Mollie Hawkins, the grantor, and the notary who prepared the deed and took the acknowledgment. The plaintiff further testified that he went into possession in January, 1909, and had remained in the sole possession ever since; that he did not place his deed of record until the 8th of August, 1911; that he paid no rent to any one for the land, which Mollie Hawkins corroborated, and denied that he ever suggested to defendant that she buy the land, and rent it to him, but claims that he had occupied it as his own ever since he bought it.

Defendant introduced testimony to the effect that in March, 1911, Mollie Hawkins proposed to sell the property to defendant, and came to Muskogee on the 10th of that month, and that she and the said Mollie Hawkins and Maggie Jones, the granddaughter of the said Mollie Hawkins, went to the office of a notary public, and there a deed was made to her by the said Mollie Hawkins, the name of the grantor being signed by the notary, as she could not write, duly acknowledged before the notary, and witnessed by Sandy Crowell, a negro, and Lyman W. Whitelock, a white person; that when the deed was executed, she, Mollie Hawkins, and her granddaughter, went from there

to defendant's home where she paid her $800 in currency for the land and took a receipt therefor, which was witnessed by the six persons present, who signed the receipt as witnesses, some signing their names themselves, and those who could not write making their mark after the defendant had attached their names, she also attaching the name of Mollie Hawkins. The defendant offered testimony further to the effect that she and one Nathan Hayes saw the plaintiff before she purchased, and he asked her if she was going to buy the land, and, if so, stated he wanted to rent it; that he made no claim to the land and did rent it from her after she purchased it.

3.    Near the close of the trial, after each side had offered voluminous testimony to support their respective contentions, the defendant tendered in evidence the deed from Mollie Hawkins to herself, to the introduction of which plaintiff objected, assigning as grounds therefor that the said deed was immaterial, irrelevant, and incompetent, and that it showed on its face that it was not executed as required by and in accordance with section 2965, Comp. Laws 1909, and was therefore void and of no effect, which objection was sustained by the court.

Plaintiff also objected to the introduction of the receipt for the money upon practically the same ground, which objection was by the court also sustained.

4.    The defendant makes 23 assignments of error, but waives all of them except the two which embrace the ruling of the court in excluding the deed and receipt from Mollie Hawkins to defendant. It appears that Mollie Hawkins' name was written and her mark made by the notary and her signature witnessed by two other witnesses, each signing the deed as witnesses and her acknowledgment taken by the notary, but the notary did not sign his name as witness to her signature.

It appears that the court based his reason for sustaining the objection to the deed on section 2965 of Comp. Laws 1909, which is as follows:

" 'Signature' or 'subscription' includes mark, when the person cannot write, his name being written near it, and written by a person who writes his own name as a witness."

It appears upon the face of the deed that it was acknowledged by Mollie Hawkins before the notary, and it has become the settled law of this state that the certificate of the notary as to the execution of the deed is a sufficient compliance with the requirements of attestation by witnesses to the grantor's signature by mark.

In the case of *Campbell v. Harsh,* 31 Okla. 436, 122 Pac. 127, this very question was under consideration and therein the court used the following language:

"In support of this objectiin it is urged that, as there was no evidence that either of the subscribing witnesses to any one of these deeds signed the name of any one of said several grantors thereto, none of said deeds were shown to have been properly executed, and were void. To this it is sufficient to say that, since said signing and witnessing is fair on its face, if it were necessary to uphold the validity of these deeds, it might be fairly presumed, since the law required it, that one of the subscribing witnesses did sign the name of the grantor. But it is unnecessary to indulge such presumption, for the reason that acknowledgment before the proper officer was, in effect, an adoption of the signature thus made by the grantor, which was all that was necessary."

It is thus apparent that the court erred in excluding the deed from consideration upon the point raised. *Hilsmeyer v. Blake,* 34 Okla. 477, 125 Pac. 1129; *Campbell v. Harsh,* 31 Okla. 436, 122 Pac. 127; *Sims v. Hedges,* 32 Okla. 683, 123 Pac. 155; *Walker, Bond & Co. v. Purifier,* 32 Okla. 844, 124 Pac. 322.

But the court's ruling in excluding the receipt for the money was proper. In the case of *Sims v. Hedges, supra,* the question there presented showed the execution of a note, signed by mark, and the person who wrote his name as a witness to the mark was not the same person who wrote the payor's name to the note, and the court, following section 2965, Comp. Laws 1909, says:

"In *Sivils v. Taylor,* 12 Okla. 47 [69 Pac. 867], it is held that 'the mark of one who cannot write, under the statutes of this territory, is not a signature or subscription, unless the person writing his name writes his own  *  *  *  as a witness under it.' Under this rule it is apparent that the note sued on had not been executed by" the payor.

The reason for holding a deed so executed in this manner and acknowledged to be valid, while a note so executed is held void, is based upon the principle that the acknowledgment by an officer is such an act as to operate as an adoption of the signature, but in the execution of a note, there being the absence of an acknowledgment, no such reason exists, and the statute has not been complied with.

5. But because the court improperly excluded the deed offered by the defendant, which was the basis of her claim to the tract of land in controversy, it does not follow that the judgment of the trial court must be reversed for the reason that the court made a finding of fact upon another issue raised in the case which fully sustains the judgment rendered. The plaintiff pleaded that he purchased the land in controversy and went into sole possession in January, 1909, and had been in the exclusive possession ever since and had paid rents to no one. Defendant in her answer alleged that he was in possession as the tenant of Mollie Hawkins, and upon the issue thus raised the court made the following findings of fact:

"The court, being well advised in the premises, finds upon all the material issues in favor of the plaintiff. Court finds that

the plaintiff is now and has been in possession and occupancy of the premises described in the petition since the 1st day of January, 1909. Court finds that on the 16th day of December, 1908, Mollie Hawkins, for a valuable consideration, made, executed, and delivered to the plaintiff herein her certain warranty deed for the premises described in plaintiff's petition, and thereby conveyed the same to him; that since that date the said Mollie Hawkins has received no rents and profits from said premises, and that ever since that date the plaintiff herein has been in the adverse possession of said premises as to the said Mollie Hawkins."

From an examination of the record it plainly appears that the improper exclusion of the deed offered by defendant did not operate in the exclusion of any other competent testimony upon the other issues in the case. The deed was excluded almost at the end of the testimony and, after it was excluded, each side fully completed their offer of testimony upon every phase of the case.

Plaintiff was contending upon at least three theories: (1) The defendant purchased with full knowledge that he was the owner and in possession under a deed from Mollie Hawkins, although it was unrecorded; (2) the defendant's deed was a forgery; (3) that if defendant's deed was in fact executed by Mollie Hawkins, it was void for the reason that the said grantor had not received any of the rents or profits from the land for the space of one year before the date of the conveyance to defendant, and, upon the issue last named, the court found for the plaintiff, and if the deed to defendant had been introduced in evidence, yet, nevertheless, upon the findings of the court on this last issue, judgment necessarily must follow the finding and go for plaintiff, even should the deed be in evidence and found by the court to have been properly executed, and otherwise regular and valid. Upon the second issue that the deed was a forgery, the court made no finding, but should he have done so, the evidence in this case would have permitted but one conclusion, and that is that the deed offered by defendant

was a corrupt forgery. · The evidence shows in this case that both the plaintiff and Mollie Hawkins are ignorant negroes, devoid of education, and discloses a crude and unscrupulous plot to divest them of their land by a designing person, who proved to be a novice and an amateur in the field of graft, and whose narrative, though fully corroborated by a vast array of witnesses of the execution of the deed and the payment over to the grantor of the money, was ridiculous and positively absurd, and the court could but reject it all even though six persons testified they witnessed the payment of the money claimed to have been made to grantor, and signed the receipt for same as witnesses.

The judgment of the trial court is affirmed; costs taxed against plaintiff in error.

By the Court: It is so ordered.